**Alfred L. MANSION, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 90–15941.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 21, 1991.*

Decided Sept. 27, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

John H. Erickson, Erickson, Beasley and Hewitt, San Francisco, Cal., for plaintiff-appellant.

Susan L. Kamlet, Asst. U.S. Atty., San Francisco, Cal., for defendant-appellee.

Before D.W. NELSON, HALL and FERNANDEZ, Circuit Judges.

---

**D.W. NELSON, Circuit Judge:**

Alfred Mansion appeals from an adverse summary judgment granted in favor of the United States. Mansion's suit against the government, brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, arose from his slip and fall at Fleet Recreation Park in Alameda Naval Air Station. We conclude that California's "recreational use" statute immunizes the government from liability and therefore affirm the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Alfred Mansion worked as a civilian employee in the Naval Supply Center at the Naval Air Station in Alameda for over thirty years. Approximately two years after his retirement, Mansion attended the annual "Old Timers Day" picnic held at Fleet Recreation Park on October 9, 1987. The Naval Employees Association (NEA), an unofficial organization of former Navy civilian employees, sponsored the picnic and received permission to use this park located entirely within the grounds of the military facility.

Hearing an announcement that food was ready, Mansion began to walk toward the barbecue grills located on a concrete slab. On his way he slipped in a puddle and fell onto the concrete, injuring his arm and shoulder. Mansion subsequently sued the government under the Federal Tort Claims Act.

After discovery, the district court granted the government's motion for summary judgment, ruling that California's "recreational use" statute, Cal.Civ.Code § 846 [hereinafter "Section 846"], afforded the United States immunity from liability for Mansion's injuries.[1]

## STANDARD OF REVIEW

 We review a grant of summary judgment de novo. *Kruso v. Internation-*

---

**1.** Section 846 provides in pertinent part: "An owner of any estate or any other interest in real property ... owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose.... A 'recreational purpose,' as used in this section includes ... picnicking."

al Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Where summary judgment rests on purely legal grounds, we must determine whether the district court correctly applied the relevant substantive law. Amaro v. Continental Can Co., 724 F.2d 747, 749 (9th Cir.1984). California supplies the applicable substantive law for this action because the underlying accident occurred in that state. Simpson v. United States, 652 F.2d 831, 832 (9th Cir.1981); see also McMurray v. United States, 918 F.2d 834, 836 (9th Cir.1990) (district court's construction of state law under Federal Tort Claims Act reviewed de novo).

## DISCUSSION

Mansion attacks the district court's summary judgment on three grounds. First, he asserts that Section 846 does not entitle the government to immunity because the general public does not have open access to Fleet Recreational. Second, Mansion argues that Section 846 fails to immunize the government because the Naval Air Station is not land suitable for recreation. Finally, Mansion proposes that the consideration exception of Section 846 applies and thus removes any immunity the statute would otherwise provide. We examine these challenges seriatim.

### 1. Property Open to General Public

Many of the leading cases discussing Section 846 mention that by enacting the statute the legislature intended to encourage private landowners to allow the "general public" to recreate free of charge on their property.[2] Mansion interprets this to mean that only land owners who allow anyone and everyone free access to their property may claim recreational immunity.

■ However, Section 846 never uses the word "public" nor does an equivalent synonym appear anywhere in its text.[3] Hence the notion that Section 846 requires the property at issue to be open to the "general public" does not derive from the statute itself. Likewise the scant legislative history sheds no light on the origins of this conception. See Nelsen v. City of Gridley, 113 Cal.App.3d 87, 91, 169 Cal. Rptr. 757, 759 (1980) ("Unfortunately the Legislature has been silent about its underlying intent in enacting section Civil Code 846."). Thus this aspect of recreational immunity seems to have arisen wholly from judicial speculation regarding legislative intent.

Furthermore, we believe the oft repeated statement that the "general public" must have access to the property in question is best characterized merely as introductory or background information. In no past case did the outcome depend on this dicta, just as the result here should not. No reason exists for us to augment the statu-

2. See, e.g., Hubbard v. Brown, 50 Cal.3d 189, 193, 785 P.2d 1183, 266 Cal.Rptr. 491 (1990); Delta Farms Reclamation Dist. v. Superior Court, 33 Cal.3d 699, 707–08, 660 P.2d 1168, 1173, 190 Cal.Rptr. 494, 499, cert. denied, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983); Myers v. Atchison, Topeka & Santa Fe Ry. Co., 224 Cal.App.3d 752, 758, 274 Cal.Rptr. 122, 125 (1990); Valladares v. Stone, 218 Cal.App.3d 362, 367, 267 Cal.Rptr. 57, 59 (1990); Jenson v. Kenneth Mullen Co., 211 Cal.App.3d 653, 659, 259 Cal.Rptr. 552, 555 (1989); Domingue v. Presley of S. Cal., 197 Cal.App.3d 1060, 1066, 243 Cal.Rptr. 312, 315 (1988); Pacific Gas & Elec. Co. v. Superior Court, 145 Cal.App.3d 253, 256, 193 Cal.Rptr. 336, 338 (1983); Paige v. North Oaks Partners, 134 Cal.App.3d 860, 863, 184 Cal.Rptr. 867, 868 (1982); Gerkin v. Santa Clara Valley Water Dist., 95 Cal.App.3d 1022, 1026, 157 Cal.Rptr. 612, 615 (1979); Parish v. Lloyd, 82 Cal.App.3d 785, 787–88, 147 Cal.Rptr. 431, 432 (1978).

3. Section 846 merely uses the word "others" for which courts have improvidently substituted the phrase "general public" without further explanation or definition. We do not acknowledge this substitution as having any substantive effect in the interpretation of California's grant of recreational immunity. From the statute and case law we find no guidelines with which to interpret the meaning of "others." As a result, we will not assume that "others" necessarily means any member of the "general public," but rather means only persons the land owner permits to enter the property for recreational purposes. This understanding of the word includes both land owners who do open their property to any and all members of the public, and also land owners who allow only specific members of the public to recreate on their land.

tory elements of the code section with this seemingly additional requirement that courts have inadvertently propagated in the case law. Therefore, Mansion's reliance upon often quoted dicta does not defeat the government's defense of recreational immunity.

■ Instead, we adopt the reasoning expressed in *Stout v. United States*, 696 F.Supp. 538 (D.Haw.1987), interpreting the analogous recreational use statute of Hawaii. In addressing the issue of general public access, the district court explained:

> [A] landowner can control who uses his land for recreational purposes. Such discretion should not result in the forfeiture of the immunity that the [recreational use] statute provides. Otherwise the whole purpose of the statute would be defeated because no one would allow anyone on their land if they had to allow everyone.

*Id.* at 539.

Application of the immunity in Mansion's case serves the desired end of the statute by encouraging the government to open the park, located on its private property, to at least a portion of the public for recreational activities. As further evidence of this effect, we note that ever since Mansion's accident and accompanying lawsuit the NEA has not held the "Old Timers Day" picnic.

■ Therefore, because use of Section 846 under these circumstances advances the broad purpose of promoting recreation on private lands, we reject Mansion's contention that the government may not invoke the immunity of Section 846 merely because the "general public" does not have open access to the property in question.

### 2. Recreational Land

■ As used in Section 846 the word "premises" means a tract of land suitable for recreation. *Colvin v. Southern Cal. Edison Co.*, 194 Cal.App.3d 1306, 1314, 240 Cal.Rptr. 142, 147 (1987). Mansion argues

that the protection of Section 846 does not shield the government because the Naval Air Station is not an area suitable for recreation.

■ Following this approach unnecessarily shifts the focus of our analysis. The park, not the air station, is the property in question. Because Fleet Recreation Park, the site of the picnic and accident, is specifically designated and designed for recreational purposes, we find Mansion's reasoning without merit. *See also Palmer v. United States*, 945 F.2d 1134 (9th Cir.1991) (recreational use immunity for swimming pool on military base); *Stout*, 696 F.Supp. at 538 (recreational use immunity for woods on military base).

■ Similarly, we reject Mansion's contention that the government does not deserve recreational use immunity because it actively discouraged use of the park by restricting entry. *Wineinger v. Bear Brand Ranch*, 204 Cal.App.3d 1003, 1008–10, 251 Cal.Rptr. 681, 684–85 (1988). The security measures Mansion attempts to classify as discouragement serve to maintain the integrity of the military facility, not to limit access to the park by permitted users.

### 3. Consideration Exception

■ When a landowner grants permission to enter property for consideration, recreational use immunity does not apply.[4] Usually such consideration takes the simple form of money. *See, e.g., Graves v. United States Coast Guard*, 692 F.2d 71, 73 (9th Cir.1982) (plaintiff paid for camp site); *Thompson v. United States*, 592 F.2d 1104, 1108 (9th Cir.1979) (plaintiff paid $6 to enter motorcycle race on government land).

■ Mansion urges us to broadly interpret what suffices as valid consideration. He conjectures that the picnic confers upon the United States the benefit of improved labor relations and thus constitutes adequate consideration under the statute. We refuse to adopt such an extended inference.

---

**4.** Section 846 states in pertinent part: "This section does not limit the liability which otherwise exists ... (b) for injury suffered in any case

where permission to enter for the [recreational] purpose was granted for a consideration."

Were we to allow Mansion's claim on this ground an assessment of valid consideration would expand ad absurdum allowing the exception to effectively swallow the rule.[5] Consequently, we rule that the consideration exception does not apply and the recreational use immunity remains intact.

## CONCLUSION

We conclude that under California's recreational use statute, the property in question need not be open to the general public. The government properly employed the "recreational use" immunity afforded by Civil Code Section 846 to avoid liability for an accident occurring on a military installation. Additionally, the consideration exception does not apply. Accordingly, summary judgment is AFFIRMED.

---

5. Moreover, Mansion can not substantiate this alleged benefit nor does there appear to exist any identifiable exchange, agreement or even promisor as typically required for a finding of consideration. *See* Cal.Civ.Code § 1605.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).